IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 12, 2022

## STATE OF TENNESSEE v. THOMAS ADAM BLACKWELL

**Appeal from the Criminal Court for Sumner County
Nos. 199-2020, 461-2017, 464-2017      Dee David Gay, Judge**

—————————————————————

### No. M2020-01171-CCA-R3-CD

—————————————————————

Thomas Adam Blackwell, Defendant, claims that the trial court abused its discretion by revoking his probation, denying an alternative sentence, and ordering his three-year sentence for fourth offense driving under the influence ("DUI") to be served consecutively to the seven-year sentence that he was serving on community corrections when he was arrested for the DUI. After a thorough review of the record and applicable law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Jamie Tarkington (on appeal), Hendersonville, Tennessee, and Paul Walwyn (at hearing), Madison, Tennessee, for the appellant, Thomas Adam Blackwell.

Herbert H. Slatery III, Attorney General and Reporter; Hannah-Catherine Lackey, Assistant Attorney General; Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 13, 2018, Defendant was convicted of one count of Class C felony aggravated burglary, one count of Class D felony theft of property, and one count of Class E felony theft of property in Case No. 461-2017; and one count of Class C felony aggravated burglary, one count of Class D felony theft of property, one count of Class A misdemeanor theft of property, and five counts of Class E felony forgery in Case No. 464-2017. The trial court ordered the sentences for all counts in each case to run concurrently

and sentenced Defendant as a Range I standard offender to an effective term of four years in Case No. 461-2017 and three years in Case No. 464-2017. The court ran the sentences in the two cases consecutively for an effective total sentence of seven years to be served on community corrections and ordered Defendant to attend drug court as a condition of his alternative sentence.

A Drug Court Probation Warrant was issued on January 28, 2019, for failure to comply with the rules of drug court, breaking the fraternization rule, failing a drug test, admitting to drinking whiskey and using heroin and fentanyl, and providing a diluted urine sample. Because Judge Dee David Gay supervised Defendant in drug court, he recused himself from the probation violation hearing. The Presiding Judge of the Eighteenth Judicial District assigned Chancellor Louis W. Oliver, III, as "special judge" to preside over the case. On July 8, 2019, the special judge entered an order sentencing Defendant to 365 days in the Sumner County Detention Center, suspending the sentence to allow Defendant to attend a twelve-week inpatient rehabilitation program at Homeward Bound, and allowing Defendant to petition to suspend the remaining incarceration upon successfully completing the inpatient rehabilitation program. Defendant petitioned for release after completing the Homeward Bound program. The special judge entered an Agreed Order on December 5, 2019, releasing Defendant from incarceration to serve the balance of his sentence on community corrections.

On December 14, 2019, Defendant was arrested for DUI. On April 13, 2020, the State filed a Motion to Resentence pursuant to Tennessee Code Annotated section 40-36-106(e)(4). On July 9, 2020, Defendant entered a guilty plea as a Range II multiple offender to fourth offense DUI with the length of the sentence and manner of service to be determined at a sentencing hearing.[1] A violation of community corrections warrant was filed on July 13, 2020. The warrant alleged that Defendant had "not properly conducted himself" and had "violated the conditions of his [c]ommunity [c]orrections rules and regulations" by being charged with DUI.

A joint sentencing and revocation hearing was conducted on August 7, 2020. Hendersonville Police Department Officer Charles Ronan testified that at 2:51 a.m. on December 14, 2019, he responded to a report of a white sedan parked on the shoulder of Highway 386 with the door open and no lights on. He found Defendant asleep in the driver's seat with the keys in the ignition and the vehicle running. Defendant told Officer Ronan that he drank "one tall beer and had used heroin earlier." After Defendant performed unsatisfactorily on the field sobriety test, he was arrested for DUI. Defendant agreed to submit to a blood test. The Tennessee Bureau of Investigation Official Toxicology and the

---

[1] After his arrest for DUI, Defendant waived any conflict of interest and Judge Gay presided over the DUI case and the community corrections violation.

- 2 -

Official Alcohol Report, which were admitted into evidence as Exhibit 2, showed that Defendant had methamphetamine, amphetamine, and fentanyl in his system and that his blood alcohol content was .015.

Amy Montgomery, a social worker at the Department of Veterans Affairs ("VA"), testified by telephone that she interviewed and assessed Defendant and that he was approved for a twenty-eight-day VA inpatient program in Kentucky, followed by a thirty to forty-five-day residential treatment program for posttraumatic stress disorder. Ms. Montgomery opined that Defendant needed structure and that participating in the program would be in Defendant's best interest.

Defendant's grandmother, Joanna Henderson Blackwell, testified that she raised Defendant and was currently raising Defendant's three-year-old daughter. She said that Defendant had another daughter that he had only seen a couple of times since she was born. She said that Defendant "had so much promise, and these addictions had taken over his life." She described the last few years as "heartbreaking." She thought the Defendant really tried to change when he was in the drug court program. She said that he got a job, an apartment, and a phone. She said it was very difficult for her and Defendant's family when he relapsed. She asked the court to give Defendant "one last chance."

Defendant testified about his dismissal from the drug court program and the revocation of his community corrections sentence. He said that he voluntarily reported using drugs one time to his drug court liaison and that he thought that he was just going to be sanctioned, but when the liaison discovered that he had been fraternizing with a female sentenced to drug court, he was terminated from the program. He said that his father passed away while he was incarcerated. After completing the Homeward Bound program, he was released from custody on community corrections. He contacted the VA seeking help within two hours of being released from custody because he knew he "was going to have problems with substance abuse and [his] mental health." He said that, after his release, he had access to money from his father's estate but that it was "probably too much access and too much freedom for someone who's been locked up like [he had been]." He began using heroin within three days of being released from custody. He said that what he thought "was heroin, had methamphetamine and fentanyl in it."

Defendant said that he was injured in an accident while in the army and began using opiates. He said that his girlfriend committed suicide two months before he finished his enlistment and that he suffered from posttraumatic stress disorder as a result of his injury and his girlfriend's death. He began drinking heavily and accepted a general discharge from the army. He said that he needed help with his drug addiction and his mental health.

On cross-examination, Defendant stated that he started using alcohol at age thirteen and abusing prescription medications at seventeen. He admitted that he had twelve felony

and sixteen misdemeanor convictions. Defendant said, "In the past, Your Honor, I had people that I knew would take up my slack and would help me whenever I got in trouble and that list is dwindling. My father is gone. All I have is my grandmother. I don't have any excuses for why I did what I did before." Defendant told the court, "I need another chance." When asked by the court about not being there for his children, Defendant said, "I've been on drugs and in jail the entire time."

The presentence report, admitted as Exhibit 1, shows that Defendant had twelve felony convictions — four felony thefts, two aggravated burglaries, five forgeries, and one Habitual Motor Vehicle Offender violation. The report also shows that he had sixteen misdemeanor convictions — four thefts, two assaults, three drug offenses, one resisting arrest, one failure to appear, and four DUIs. Defendant had five prior probation violations.

The trial court found that Defendant "violated his probation for a second time, not the first time." The court noted that Defendant "was given an opportunity and he served his sentence, and then he goes out and commits a crime that's probably the dread of any judge that puts somebody on probation . . . . He goes out and commits a DUI . . . and risks [his] life and the lives of others[.]" The court noted that State had been "very generous" in not going forward with resentencing.

In sentencing Defendant for the DUI offense, the court found three of the enhancement factors listed in Tennessee Code Annotated section 40-35-114 applied. First, the court found that Defendant "had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). Additionally, the court found that Defendant "was on probation" when he was charged with fourth offense DUI. *See* Tenn. Code Ann. § 40-35-114(8). The court also found that Defendant "had no hesitation about committing a crime when the risk to human life is high." Tenn. Code Ann. § 40-35-114(10). The court found that no mitigating factors applied. The court noted that, only nine days after being released from incarceration for his probation violation, Defendant was charged with a fourth offense DUI, a crime the court found endangered both Defendant and the public. The court advised the Defendant that he was fortunate that the plea agreement allowed him to plead guilty as a Range II offender at 35% service rather than a career offender at 60% service.

The trial court found that Defendant was not credible, specifically finding that he did not tell the complete truth about why his probation was violated when he was in drug court. Based on Defendant's criminal history and prior drug use, the court noted that Defendant's potential for rehabilitation was a "long shot." The court reasoned that it "must look at the citizens and safety of the public and the public welfare."

The trial court sentenced Defendant to three years' incarceration as a Range II multiple offender for his fourth offense DUI. The court revoked Defendant's community

corrections and ordered him to serve the balance of his seven-year sentence. The court found that Defendant was on community corrections when he committed a fourth offense DUI and that Defendant had an extensive criminal record and ordered the three-year DUI sentence to run consecutively to the seven-year sentence. The court recommended that Defendant receive treatment at Lois M. DeBerry Special Needs Facility if the Tennessee Department of Correction would accept him into that treatment program.

ANALYSIS

On appeal, Defendant claims that the trial court abused its discretion by revoking his probation, by not sentencing him to an alternative sentence, and by ordering his sentences to run consecutively. The State argues that the trial court properly exercised its discretion in revoking probation and sentencing Defendant. We agree with the State.

**Revocation of Community Corrections**

On March 4, 2022, eight months after the revocation hearing in this case, our supreme court issued *State v. Dagnan*, concluding "that probation revocation is a two-step consideration on the part of the trial court." *State v. Dagnan*, 641 S.W.3d 751, 753 (Tenn. 2022). The first step "is to determine whether to revoke probation." *Id.* The second step "is to determine the appropriate consequence upon revocation." *Id.* In *Dagnan*, the supreme court made it clear that "[s]imply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." *Id.* at 758-59. The trial court must place on the record sufficient findings for the appellate court to be able to conduct a meaningful review of both its decision to revoke probation and its decision to impose a sentence for the revocation. *Id.* at 759. If the trial court does so, an abuse of discretion with a presumption of reasonableness standard of appellate review applies. *Id.* If a trial court fails to place on the record its reasoning for revoking probation, unless the defendant admits to the violation, or fails to place on the record its reasoning for imposing the sentence, an appellate court may conduct a *de novo* review if the record is sufficiently developed for the court to do so or may remand the case to the trial court to make such findings. *Id.*

Although there are a few differences, a community corrections sentence "closely resembles that of probation" and "the same principles are applicable in deciding whether a community corrections sentence revocation was proper." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Likewise, the same principles are applicable in deciding the sentence to impose after a trial court finds that a defendant violated the terms of a community corrections sentence. The two-step consideration for probation revocation hearings outlined in *Dagnan*, also applies to revocation of community corrections hearings. *State*

*v. Gibbs*, No. M2021-00933-CCA-R3-CD, 2022 WL 1146294, at \*3 (Tenn. Crim. App. Apr. 19, 2022).

### *Step One - Violation*

The trial court placed its reasons for revoking Defendant's community corrections on the record. The court noted that Defendant entered a plea of guilty to fourth offense DUI, an offense that he committed only nine days after he was released from custody for previously violating the terms of community corrections. Defendant's guilty plea was substantial evidence for the trial court to find "by a preponderance of the evidence that [D]efendant violated the conditions of his release." *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005) (citing Tenn. Code Ann. § 40-35-311(e)). The trial court did not abuse its discretion by revoking Defendant's community corrections.

### *Step Two - Sentence for the Violation*

After stating its reason for revoking Defendant's community corrections, the trial court did not make any additional findings or state any additional reasons before announcing its decision to commence the execution of the judgment as originally entered. Although many of the reasons for revoking community corrections might also be reasons to support the court's sentencing decision, the court did not employ a "two-step" process, and we cannot determine if the court's sentencing decision was the result of a "separate exercise of discretion." *Dagnan*, 641 S.W.3d at 760. When the trial court fails "to place its reasoning for a revocation decision on the record," this court may conduct a *de novo* review "if the record is sufficiently developed for the court to do so," or we "may remand the case to the trial court to make such findings." *Id.* at 759. Therefore, an abuse of discretion with a presumption of reasonableness standard of appellate review does not apply to the trial court's decision to commence the execution of the judgment as originally entered. *Id.* We determine that the record is sufficiently developed for this court to conduct a *de novo* review.

Tennessee Code Annotated section 40-36-106(e)(3)(B), a section of the Tennessee Community Corrections Act of 1985, states that: "Failure to comply with the terms of probation subjects the offender to revocation proceedings conducted by the court pursuant to § 40-35-311. Tennessee Code Annotated section 40-35-311(e)(2) provides:

> If the trial judge revokes a defendant's probation and suspension of sentence after finding, by a preponderance of the evidence, that the defendant has committed a new felony . . . then the trial judge may revoke the probation and suspension of sentence . . . and cause the defendant to commence the execution of the judgment as originally entered, which may be reduced by an

amount of time not to exceed the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation.

Based on our review of the record, we determine that Defendant has an extensive criminal record. The presentence report shows that Defendant had twelve felony convictions, sixteen misdemeanor convictions, and five previous probation violations. Defendant has been incarcerated numerous times. The Revocation Order shows that Defendant was incarcerated on seven different occasions and received 821 days of pretrial credit. He also received 276 days of community corrections credit. The current violation was Defendant's second violation of probation for his 2018 conviction for two counts of aggravated burglary, four counts of theft of property, and five counts of forgery. He was sentenced to serve 365 days for the second probation violation but was released early after completing an inpatient drug treatment program. He began using heroin within three days of his release and was arrested for felony DUI nine days after being released from custody. The Strong-R Needs Assessment Report shows that Defendant is a high risk for continued alcohol and drug use. It is clear from the record that Defendant cannot or will not comply with the rules of probation. Defendant has shown a "lack of potential for [his] rehabilitation." Tenn. Code Ann. § 40-35-103(5). We determine that there was substantial evidence to commence the execution of the judgment as originally entered.

## Alternative Sentence

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2021), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2021); *Bise*, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). A trial court's "misapplication of an enhancement or mitigation factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2021).

Tennessee Code Annotated section 40-35-303 states that:

[a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a) (2021). A defendant has the burden of establishing that he is suitable for probation and "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2021).

Trial courts are encouraged to utilize alternative sentences. *See* Tenn. Code Ann. § 40-35-102(3)(C) (2021); *Ray v. Madison Cty., Tennessee*, 536 S.W.3d 824, 833 (Tenn. 2017). "Any sentence that does not involve complete confinement is an alternative sentence." *State v. Gregory Tyrone Dotson*, No. M2018-00657-CCA-R3-CD, 2019 WL 3763970, at *10 (Tenn. Crim. App. Aug. 9, 2019) (citing *State v. Fields*, 40 S.W.3d 435 (Tenn. 2001)).

In imposing the three-year sentence to be served in the Tennessee Department of Correction for the fourth offense DUI, the trial court emphasized the seriousness of DUI and the significant risk that DUI posed to the public and to Defendant. The court noted that the presentence report showed that Defendant had twelve prior felony convictions, sixteen prior misdemeanor convictions, and five probation violations. The court found three of the enhancement factors applied: (1) that Defendant "had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(1); (2) that Defendant was on probation when he was charged with fourth offense DUI, Tenn. Code Ann. § 40-35-114(8); and (3) that Defendant "had no hesitation about committing a crime when the risk to human life is high," Tenn. Code Ann. § 40-35-114(10). The court found that no mitigating factors applied.

Although Defendant would be eligible for an alternative sentence after serving one hundred and fifty consecutive days in the county jail for fourth offense DUI, he failed to establish his suitability for probation. Defendant's extensive criminal record and his inability to comply with the rules of probation do not weigh in favor of an alternative sentence.

Based on Defendant's criminal history and prior drug use, the court noted that Defendant's potential for rehabilitation was a "long shot." The court reasoned that it "must look at the citizens and safety of the public and the public welfare."

The principles of sentencing in Tennessee Code Annotated section 40-35-103(1)(A) and (C) support the trial court's decision to order the sentence to be served in confinement. The trial court did not abuse its discretion in sentencing the Defendant.

### Consecutive Sentences

In *State v. Pollard*, the Tennessee Supreme Court expanded its holding in *Bise* to trial courts' decisions regarding consecutive sentencing. 432 S.W.3d 851, 859 (Tenn. 2013). "The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that[] . . . [t]he defendant is an offender whose record of criminal activity is extensive," Tenn. Code Ann. § 40-35-115(b)(2) (2015), or the

defendant is sentenced for an offense committed while on probation. Tenn. Code Ann. § 40-35-115(b)(6) (2015). Any one ground set out in Tennessee Code Annotated section 40-35-115(b) is "a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* (citing Tenn. R. Crim. P. 32(c)(1)).

The trial court found that Defendant was on probation when he committed a fourth offense DUI and that Defendant had an extensive criminal record consisting of twelve prior felony convictions, sixteen prior misdemeanor convictions, and five probation violations. The court did not abuse its discretion in aligning the sentences consecutively.

**Conclusion**

We affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE